RECEIPT # 55477
AMOUNT $ 150
SUMMONS ISSUED
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK.
DATE 4-23-04

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

CTC LITIGATION TRUST,

        Plaintiff,

v.

TELECOM REALTY, LLC,

        Defendant.

Civil Action No. _____

04 - 10811 GAO

MAGISTRATE JUDGE Bowler

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1331, 1334, 1441, 1446 and 1452, and Local Rule 81.1 of the United States District Court for the District of Massachusetts, defendant, Telecom Realty, LLC ("Telecom Realty"), hereby removes the case entitled <u>CTC Litigation Trust v. Telecom Realty, LLC</u>, Superior Court Department, Suffolk County, Civil Action No. 2004-1101, to the United States District Court for the District of Massachusetts. In support hereof, Telecom Realty states as follows:

    1.    On or about March 12, 2004, this action was commenced by the CTC Litigation Trust (the "Plaintiff") against Telecom Realty, and is now pending in the Suffolk Superior Court (the "Superior Court") (A copy of the Civil Action Cover Sheet and Verified Complaint are attached hereto as Exhibit "A"). On or about March 18, 2004, the Superior Court issued a Summons to Telecom Realty (the "Summons") (a copy of the Summons is attached hereto as Exhibit "B"). Counsel to Telecom Realty accepted service of the Plaintiff's Summons and Verified Complaint on March 24, 2004.

2. Also on or about March 12, 2004, the Plaintiff filed an Emergency Motion for Temporary Restraining Order (the "Motion") (a copy of the Motion is attached hereto as Exhibit "C"). Pursuant to an agreement among the Plaintiff and Telecom Realty, a Stipulated Order pertaining to the Motion was entered by the Superior Court on March 24, 2004 (a copy of the Stipulated Order is attached hereto as Exhibit "D"). By agreement of the parties, the time within which Telecom Realty must file and serve its answer to Plaintiff's Verified Complaint was extended to and including May 3, 2004. There have been no further proceedings in this action.

3. This Court has original jurisdiction for removal purposes pursuant to 28 U.S.C. § 1334 in that this is a civil action arising in or related to a case under title 11 of the United States Code.

4. In the Verified Complaint, the Plaintiff alleges identical causes of action for avoidance of a fraudulent transfer pursuant to 11 U.S.C. §§ 548 and 550(a) and Massachusetts General Laws chapter 109A. Accordingly, this action may properly be removed to this Court pursuant to 28 U.S.C. §§ 1441 and 1452.

5. Telecom Realty hereby reserves the right to seek referral of this case pursuant to 28 U.S.C. § 157 and Local Rule 201 of the United States District Court for the District of Massachusetts, to the United States Bankruptcy Court for the District of Massachusetts (Eastern Division).

WHEREFORE, Telecom Realty respectfully requests that this Court enter an order (i) removing this action from Suffolk Superior Court to this Court; and (ii) granting such other and further relief as their Court deems just and appropriate.

TELECOM REALTY, LLC

By its attorneys,

CRAIG AND MACAULEY
  PROFESSIONAL CORPORATION

Dated: April 23, 2004

William R. Moorman, Jr. (BBO# 548593)
Brendan C. Recupero (BBO# 645032)
Craig and Macauley
 Professional Corporation
Federal Reserve Plaza
600 Atlantic Avenue
Boston, MA 02210
(617) 367-9500

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the following attorney of record by hand delivery on April 23, 2004.

*[signature]*
Brendan C. Recupero

William R. Baldiga
Brown Rudnick Berlack Israels LLP
One Financial Center
Boston, MA 02111

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss    SUPERIOR COURT DEPARTMENT
CIVIL ACTION NO.
04-1101-A

| | |
|---|---|
| CTC LITIGATION TRUST, | ) |
| Plaintiff, | ) 04-10811 GAO |
| v. | ) |
| TELECOM REALTY, LLC, | ) **VERIFIED COMPLAINT** |
| Defendant. | ) |

## INTRODUCTION

This action arises out of the chapter 11 bankruptcy of CTC Communications Group and certain of its affiliates ("CTC"). In this complaint, the CTC Litigation Trust seeks to recover sums of money and other assets transferred to the defendant when CTC leased telecommunications operations and office space from (and then abandoned such space back to) Telecom Realty, LLC ("Telecom Realty"), a real estate syndicate in which CTC's insiders (its Chief Executive Officer, at least four of its other officers, and its outside captive counsel) had a majority interest. The lease required CTC to undertake $21.6 million in improvements, including the replacement of the roof, asbestos remediation and the installation of major telecommunications equipment and central air conditioning. These massive improvements were made for the benefit of the syndicate owned by various CTC insiders at a time when CTC was, on information and belief, insolvent, or rendered CTC insolvent. All of those improvements have been since transferred to Telecom Realty, again while CTC was insolvent. The CTC

1

Litigation Trust brings this action to recover the sums of money and other assets fraudulently conveyed to Telecom Realty to the detriment of CTC's creditors in a flagrant case of self-dealing.

## PARTIES

1. Plaintiff, The CTC Litigation Trust (the "Trust"), is a Trust created pursuant to CTC's Second Amended Joint Plan of Reorganization (the "Plan") to own and administer certain claims and other assets for the benefit of CTC's creditors. The claims set forth in this action are "Retained Actions" within the meaning of that term under the Plan, and are administered by the Trust. The Trust represents the interests of creditors holding unpaid claims exceeding $300 million. The Trust's principal place of business is c/o The Recovery Group, 270 Congress Street, Boston, Massachusetts 02109.

2. The order confirming the Plan was entered by the United States Bankruptcy Court for the District of Delaware (in Case No. 02-12873 (PJW)) on November 20, 2003. The Plan became effective as of December 16, 2003. The Trust is the lawful owner of and party plaintiff with respect to the claims here asserted.

3. Upon information and belief, the defendant, Telecom Realty, is a Massachusetts limited liability company with a principal place of business at c/o Mr. Thomas Fabbricatore, 220 Bear Hill Road, Waltham, Massachusetts 02154.

4. This Court has personal jurisdiction over Telecom Realty pursuant to G.L. c. 223A, §§ 3(a) and (e).

## GENERAL ALLEGATIONS

5. Before its bankruptcy, CTC was a publicly traded company operating as an integrated communications carrier offering voice, data, Internet, and video services in the

2

northeastern United States. At all times relevant to this complaint, Robert Fabbricatore was the Chief Executive Officer of CTC.

6.  At a May 4, 2000 Special Meeting of CTC's Board of Directors, Robert Fabbricatore announced that he had formed Telecom Realty. A true and accurate copy of the board minutes are attached hereto as Exhibit A. According to the board minutes, the majority of the membership interests in Telecom Realty were owned by "certain executive officers and Counsel to the Corporation." (Ex. A, p. 5).

7.  Specifically, upon information and belief, the following CTC insiders held majority financial interests in Telecom Realty:

- Robert Fabbricatore, CTC's Chief Executive Officer;
- John D. Pittenger, CTC's Executive Vice President – Finance & Administration, Chief Financial Officer, Treasurer, and Secretary;
- Steven P. Milton, CTC's President and Chief Operating Officer;
- Michael Donnellan, CTC's Vice President –Field Operations;
- Thomas Fabbricatore, CTC's Vice President – Business Systems; and
- Leonard Glass, Esq., CTC's counsel.

8.  At the May 4, 2000 meeting, Robert Fabbricatore stated that Telecom Realty had purchased or was prepared to purchase property at 115-125 Second Avenue, Waltham, Massachusetts ("the Building") (Ex. A, p. 4).

9.  Robert Fabbricatore proposed that CTC enter into an agreement with Telecom Realty to lease some 71,000 square feet of office space in the Building (the "Telecom Realty Lease") and claimed that the lease terms would be "comparable to and in most cases, more favorable than leases for comparable space, which could be obtained in arms-length transactions with unaffiliated parties." (Ex. A, pp. 4-5).

3

10. Robert Fabbricatore had engaged a third party, Insignia ESG ("Insignia"), to assign a fair market rent for the office space at the Building (Ex. A, p. 5). Insignia's appraisal indicated that a fair rent for the office space at the Building was $25 per square foot, with annual 3% rent increases. (Ex. A, p. 2).

11. The Directors approved the terms and conditions of the Telecom Realty Lease (Ex. A, p. 5), and CTC entered into the 15-year Telecom Realty Lease on or about May 22, 2000. A true and accurate copy of the Telecom Realty Lease is attached hereto as Exhibit B.

12. While the rent payable under the Lease may have been set at a fair level, the other (and most critical) provisions of the Telecom Realty Lease heavily favored Telecom Realty. While the Telecom Realty Lease established the amount due for rent that Insignia had determined was fair (Ex. B, p. iii), the Lease also required CTC to undertake on Telecom Realty's behalf an enormous build-out of the facility, including the replacement of the roof, asbestos remediation, and the installation of central air conditioning and other very expensive telecommunications and other equipment and other items (collectively, the "Build-Out Assets") (Ex. B, p. 5). A chart of the Build-Out Assets is attached as Exhibit C.

13. This build-out requirement effectively caused CTC to refurbish the building for the benefit of the syndicate owned by Telecom Realty, itself owned by Robert Fabbricatore, Thomas Fabbricatore, Glass, Pittenger, Milton and Donnellan. The requirement that CTC purchase the Build-Out Assets was not specifically reflected in the minutes of the Board of Directors. See Exhibit A.

14. CTC spent over $21.6 million in cash payments (the "Build-out Transfers") during 2000 and 2001 to purchase and construct the Build-Out Assets, in addition to the more

4

than $3.8 million CTC paid in rent between May 2000 and its October 3, 2002 chapter 11 filing. CTC also posted a security deposit in the amount of $889,000 (the "Security Deposit").

15. The Build-Out Transfers began in March 2000, well before the terms of the Telecom Realty Lease required CTC to make improvements to the premises.

16. CTC occupied the Building for less than 29 months before filing for bankruptcy.

17. During CTC's chapter 11 case, the Bankruptcy Court entered an order dated November 20, 2003 approving a stipulation resolving, on an interim basis only, various issues among CTC, Telecom Realty, and GATX Technology Service Corporation (an equipment lessor with significant equipment in the Building). True and accurate copies of that order and stipulation (collectively, the "Stipulation") are attached hereto as Exhibit D.

18. Paragraph 14 of that Stipulation provided that, under certain conditions, Telecom Realty was permitted to withdraw and setoff cash from the $889,000 security deposit against any claim that may be allowed in its favor in the bankruptcy case, but that Telecom Realty would be permitted to do so only upon three days notice to certain parties, including the Trust. Ex. D, ¶14.

19. However, the Stipulation specifically contemplated that the Trust might seek to prevent any such withdrawal or setoff. The Stipulation further provided, in relevant part, that:

> ... the Litigation Trustee shall [] have the right and be authorized to commence and prosecute such an action [against Telecom Realty] and to object to any claims of Telecom Realty. Upon the (i) commencement of such an action against Telecom Realty and (ii) after the filing of a motion and, upon notice and a hearing, entry of a court order prohibiting or staying Telecom Realty from exercising its right set forth in paragraph 14 above, Telecom Realty shall be prohibited from exercising the asserted setoff rights in the Security Deposit granted in paragraph 14 above, unless and until any such court order is revoked, rescinded, or stayed.

Ex. D, ¶15.

5

20. After the close of business on Wednesday, March 10, 2004, the Trust received notice in the form of the letter attached hereto as <u>Exhibit E</u> that Telecom Realty intends to effectuate setoff from the security deposit in the amount of $175,000.

21. As of the date hereof, there has been <u>no claim allowed</u> in favor of Telecom Realty in CTC's chapter 11 case. Further, the Trust (as CTC's successor for such purposes) intends to object to Telecom Realty's claim altogether and affirmatively recover from Telecom Realty millions of dollars of damages on account of the one-sided real estate transaction described above, on theories including the avoidance of such transactions as fraudulent transfers. (The Litigation Trust also intends to bring claims against Mr. Fabbricatore and others for other fraudulent and improper transactions, violation of fiduciary duties, paying his personal gardener and yacht crew from CTC's payroll, and assorted other misdeeds causing harm to CTC and its creditors in amounts well exceeding $20 million; while not brought here, the Trust reserves all of its rights and remedies in respect thereof.)

22. Certain of the causes of action by the Trust against Telecom Realty are plead below as Counts I and II. In addition, and to avoid the dissipation of what appears to be Telecom Realty's only unencumbered asset, the Security Deposit, the Trust hereby requests interim injunctive relief prohibiting the setoff and loss of such funds pending disposition of the Trust's claims against Telecom Realty.

23. Upon information and belief:

    a. all of Telecom Realty's assets, with the possible exception of the Security Deposit which is at risk of imminent disposition in substantial part, are fully encumbered and not available to Telecom Realty's creditors upon entry of judgment; and

    b. if any part of the Security Deposit is released from escrow to Telecom Realty, Telecom Realty is obligated to in turn surrender that cash to its mortgagee, and that the cash would then be forever lost to the Trust.

## COUNT I
### (Avoidance of Build-Out Transfers as Fraudulent Transfers; Pursuant to G.L. c. 109A)

24. The Trust incorporates by reference each allegation of paragraphs 1 through 23 above.

25. The Build-Out Transfers occurred without fair consideration and CTC received less than a reasonably equivalent value in exchange.

26. Upon information and belief, the Build-Out Transfers occurred when CTC was, or was thereby rendered, insolvent.

27. At the time it made the Build-Out Transfers, CTC was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with CTC was an unreasonably small capital.

28. At the time it made the Build-Out Transfers, CTC intended to incur, or reasonably should have believed that it would incur debts that would be beyond CTC's ability to pay as such debts became due.

29. Accordingly, the Build-Out Transfers were fraudulent as to CTC's creditors.

30. Accordingly, the Build-Out Transfers may be set aside, avoided, and disregarded pursuant to G.L. c. 109A, § 9.

## COUNT II
### (Avoidance of the Transfers of the Build-Out Assets as Fraudulent Transfers Pursuant to 11 U.S.C. § 548)

31. The Trust incorporates by reference each allegation of paragraphs 1 through 30 above.

32. CTC surrendered all of its interests in the Build-Out Assets, for which it paid more than $21 million, upon rejection of its Lease. See Stipulation, ¶3. Under applicable

bankruptcy law (including 11 U.S.C. §365(g)), the rejection of the Lease, and thus CTC's loss of all value in the Build-Out Assets, is deemed to constitute a breach as of immediately before the date of CTC's bankruptcy petition. Accordingly, CTC lost the value of, and is deemed to have transferred to Telecom Realty, the Build-Out Assets within one year before the commencement of its bankruptcy case.

33. CTC received less than a reasonably equivalent value in exchange for the Build-Out Assets.

34. At the time of its transfer of the Build-Out Assets to Telecom Realty, CTC was insolvent or became insolvent as a result of its transfer of the Build-Out Assets.

35. At the time of its transfer of the Build-Out Assets to Telecom Realty, CTC was engaged in business or a transaction, or was about to engage in business or a transaction, for which its remaining property was unreasonably small capital.

36. At the time of its transfer of the Build-Out Assets to Telecom Realty, CTC intended to incur, or believed that it would incur debts that would be beyond CTC's ability to pay as such debts matured.

37. Accordingly, the transfers of the Build-Out Assets were fraudulent pursuant to 11 U.S.C. § 548, and the estate and creditors of CTC have been damaged as a result.

38. Therefore, the transfers of the Build-Out Assets may be avoided under 11 U.S.C. §§ 548 and 550(a).

## CLAIMS FOR RELIEF

WHEREFORE, the plaintiff, CTC Litigation Trust, respectfully requests that this Court:

1. Enter judgment in its favor on Counts I and II of the Complaint, avoiding the Build-Out Transfers and the transfer of the Build-Out Assets and awarding the Trust damages, plus costs, statutory interest and attorneys' fees;

2. After hearing, enter an order pursuant to Mass. R. Civ. P. 65(a) temporarily restraining Telecom Realty, its agents, shareholders, officers, directors, employees, affiliates, attorneys or assigns, or anyone acting in concert with them or having actual knowledge of this injunction, from withdrawing cash from the Security Deposit until further order of the Court;

3. After hearing, enter an order pursuant to Mass. R. Civ. P. 65(b) preliminarily enjoining Telecom Realty, its agents, shareholders, officers, directors, employees, affiliates, attorneys or assigns, or anyone acting in concert with them or having actual knowledge of this injunction, from withdrawing cash from the Security Deposit until further order of the Court;

4. After final judgment, enter an order providing that the Security Deposit be delivered to the Trust in full or partial satisfaction of Telecom Realty's obligations to the Trust; and

5. Enter such other further relief as this Court deems just and appropriate.

CTC Litigation Trust

By its attorneys,

*Amanda Buck Varella*
William R. Baldiga, BBO #542125
Robert L. Harris, BBO #644829
Amanda Buck Varella, BBO #641736
BROWN RUDNICK BERLACK ISRAELS LLP
One Financial Center
Boston, MA 02111
(617) 856-8200

Dated: March 12, 2004

9

## **VERIFICATION**

I, Eric A.W. Danner, being duly sworn, hereby state as follows: I am employed by The Recovery Group, the professional services firm led by Stephen S. Gray, himself a Trustee of the CTC Litigation Trust. I have read the allegations set forth above in this Verified Complaint and swear that they are true to the best of my knowledge, information and belief, and, as to those allegations based upon information and belief, they are true to the best of my knowledge. I have also reviewed each of the exhibits attached to the Verified Complaint and attest that, to the best of my knowledge, they are true and accurate copies of business records of the Trust.

Signed under the pains and penalties of perjury this 12th day of March, 2004.

10