UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CTC LITIGATION TRUST,<br><br>    Plaintiff,<br><br>v.<br><br>TELECOM REALTY, LLC,<br><br>    Defendant. | CIVIL ACTION NO. 04-10811-GAO |

## EMERGENCY MOTION TO EXTEND DEADLINE FOR SUBMISSION OF EXPERT REPORT

Plaintiff, the CTC Litigation Trust ("the Trust"), hereby moves this Court for an order extending the deadline for submission of Plaintiff's expert report from December 15, 2005 to January 15, 2006 in connection with the above-captioned case. As grounds for this motion, the Trust, which has already retained an expert, states that due to a miscommunication between its attorneys, it failed to submit an expert report by the December 15th deadline. However, given the fact that the failure was unintentional and no prejudice or harm has resulted from such failure, the Trust respectfully request that this Court extend the deadline for submission of the expert report until January 15, 2006. In further support of this Emergency Motion, the Trust states as follows:

### I.    FACTUAL BACKGROUND

1.    Pursuant to CTC's plan of reorganization,[1] the Trust is authorized to, among other things, resolve, liquidate and realize upon certain assets as the successor to and

---

[1] On October 3, 2002 (the "Petition Date"), CTC filed a voluntary petitions in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code"). The Trust was created pursuant to CTC's Second Amended Joint Plan of Reorganization (the "Plan"). The Plan was confirmed by an order of the Bankruptcy Court dated November 20, 2003, and became effective as of December 16, 2003 (the "Effective Date").

representative of the CTC's bankruptcy estates. These assets include, without limitation, certain causes of action arising under Chapter 5 of the Bankruptcy Code.

2. Since the Effective Date, the Trust has initiated over 100 civil actions in multiple jurisdictions (Delaware and Massachusetts). The Trust has also administered and resolved over $100,000,000 in claims against the estate of CTC. In view of this substantial undertaking, the Trust has retained two law firms, Brown Rudnick Berlack Israels LLP ("BRBI") and Green & Hoffman P.C. ("G&H"), to serve as its counsel. The law firms assumed responsibilities for different cases initiated by the Trust.

### A. Claims Against Telecom Realty

3. On or about March 12, 2004, the Trust filed its Verified Complaint against Telecom Realty, LLC ("Telecom Realty") in the Suffolk County Superior Court (the "State Court Action"). By the Verified Complaint, the Trust sought to avoid and recover certain sums of money and other assets transferred to Telecom Realty and relating to that certain Lease by and between Telecom Realty, as landlord, and CTC Communications Corp., ("CTC"), as tenant, dated as of May 22, 2000 as fraudulent transfers pursuant to 11 U.S.C. §§ 548 and 550, and M.G.L. c. 109A.

4. The State Court Action was subsequently removed to this Court by notice dated April 23, 2004. Telecom Realty filed its Answer to the Verified Complaint on or around May 5, 2004. The parties have commenced discovery in this action.

5. On or around September 22, 2004, the Trust, Telecom Realty and CTC's Plan Representative entered into a certain Stipulation Regarding Adjudication of Telecom Realty Claim (the "Claim Stipulation") in connection with CTC's chapter 11 cases (the "Bankruptcy

Case"). Pursuant to the Claim Stipulation, Telecom Realty agreed to adjudicate its proof of claim (No. 493) (the "Telecom Claim") filed in the Bankruptcy Case before this Court.

6. On or around October 3, 2004, the Trust commenced an action against Telecom Realty in the United States Bankruptcy Court for the District of Delaware. In this case, the Trust asserted claims to avoid and recover certain alleged transfers relating to the Lease as either preferences pursuant to 11 U.S.C. §§ 547 and 550 or alleged fraudulent transfers pursuant to 11 U.S.C. §§ 548 and 550 (the "Preference Action"). On May 2, 2005, the Parties filed a Joint Motion to Transfer Venue to the United States District Court for the District of Massachusetts in the Preference Action. By order dated May 27, 2005, the Preference Action was transferred to the United States District Court for the District of Massachusetts and assigned case number 05-11129-PBS.

### B. Consolidation of Cases and Pretrial Schedule

7. The Preference Action was consolidated into the instant action by order dated August 12, 2005. The parties subsequently filed a Joint Motion to Approve Joint Statement and Amended Pretrial Schedule (the "Pretrial Schedule") to establish, among other things, discovery deadlines for the consolidated cases. This Court adopted the Pretrial Schedule by order dated September 12, 2005.

8. The Pretrial Schedule provides that all fact discovery would be completed by November 15, 2005. A true and accurate copy of the Pretrial Schedule is attached hereto as Exhibit A. The Pretrial Schedule further provides that the Trust submit its expert report on or before December 15, 2005. Telecom Realty has until February 1, 2006 to submit its expert report, if any. Additionally, expert depositions are to be completed by March 1, 2006 and any motions for summary judgment filed by April 1, 2006. See Exhibit A.

9. Both actions by the Trust against Telecom Realty were filed by BRBI. BBRI also negotiated the Pretrial Schedule with counsel for Telecom Realty and appeared before the Court at the September 12, 2005 hearing where the Pretrial Schedule was adopted. BBRI is currently counsel of record for Telecom Realty in this action[2].

10. After consolidation of the cases before this Court, the Trust determined that it would make a concerted effort to settle this matter. BRBI took the lead in those discussions with Telecom Realty. During these discussions, the Trust did not take any material steps to advance the litigation. The Trust also determined that in the event that there was no settlement reached, G&H would assume principal responsibility for this case going forward. Notwithstanding that decision, certain attorneys from BRBI continued to be involved in this case, thereby causing confusion as to which firm was responsible for various responsibilities. Although G & H had retained an expert for the case and was working with him to prepare his potential testimony, G & H was not informed of the deadline for filing the expert opinion. BRBI assumed that G & H was handling the preparation of the expert report and did not work on this aspect of the case. Due to the miscommunication among counsel, the date for Plaintiff's submission of its expert report passed without a report being served.

11. On Monday, December 19, 2005 counsel for the Trust realized that the expert report deadline had passed and BRBI immediately contacted Telecom Realty's counsel and requested a brief extension until January 15, 2006 to submit an expert report. This request, however, was denied.

---

[2] The Trust retained Delaware counsel in connection with the Preference action, which was originally filed in Delaware. Delaware counsel has not formally withdrawn from the case, but is no longer actively involved.

12. As referenced above, the Trust has already retained an expert and is prepared to submit a completed expert report in accordance with Rule 26 of the Federal Rules of Civil Procedure by January 15, 2006. Submission by said date will allow ample time for Telecom Realty to prepare its own expert report, and depose the Trust's expert, if necessary before the April 1, 2006 summary judgment submission deadline. The Trust has no objection to modifying the current deadline for Telecom Realty to respond to the Trust's expert report and take the expert's deposition if Telecom Realty requires additional time. In short, there is no prejudice to Telecom Realty or the Court as a result of the extension requested herein.

## II.     ARGUMENT

13. It is well-settled that courts have broad discretion in the management of pretrial discovery. Heidelberg Americas, Inc. v. Tokyo Kikai Seisakusho, Ltd., 333 F.3d 38, 41 (1st Cir. 2003); Filiatrault v. Converse Technology, Inc., 275 F.3d 131, 137-38 (1st Cir. 2001); Fennell v. First Step Design, Ltd., 83 F.3d 526, 532 (1st Cir. 1996). More importantly, a violation of a scheduling order may be excused if good cause exists. Tower Ventures, Inc. v. City of Westfield, 296 F.3d 43, 46-47 (1st Cir. 2002). Courts have considered a number of factors in determining whether to excuse violation of a scheduling order. Robson v. Hallenbeck, 81 F.3d 1, 2 (1st Cir. 1996). These factors include the "severity of the violation, the legitimacy of the party's excuse, repetition of violations, the deliberateness vel non of the misconduct, mitigating excuses, prejudice to the other side and to the operations of the court, and the adequacy of lesser sanctions." Id.

14. In the case at bar, each of these factors militates strongly in favor of granting the brief extension. First, the severity of the violation is minimal, as the extension sought herein is relatively brief (30 days) and does not substantially alter the scheduling order. Second, the

omission was entirely unintentional and steps were taken to immediately address the issue (to no avail). Third, this is the Trust's first (and only) violation of the scheduling order. Fourth, the miscommunication between BRBI and G&H as to responsibility for this case is a legitimate excuse. Finally, there is little prejudice, if any, visited upon Telecom Realty, which will have ample time to submit its own expert report.

15. The case of Tucci v. Tropicana Casino and Resort, Inc., 834 A.2d 448, 449 (N.J. Super. Ct. App. Div. 2003) is instructive in this regard. In Tucci, the court held that the trial court had abused its discretion in dismissing the plaintiffs' case with prejudice for serving their expert report on defendants thirty-nine days after its due date where the court failed to consider countervailing factors which excused the untimely reports. Tucci, 834 A.2d at 449. Specifically, the court found that the plaintiffs' failure to serve the report was not willful or intended to mislead, the plaintiffs were legitimately delayed by the inability to obtain certain maintenance records, and the defendants failed to show any "irremediable prejudice." Id. at 452. The court declared that "sanction for an attorney's procedural violations of dismissal with prejudice must be a recourse of last resort, not to be invoked unless no lesser sanction is adequate in view of the nature of the default, its attendant prejudice to other parties, and the innocence of the sanctioned litigant." Id. Furthermore, it noted that other courts have been particularly lenient in not barring late expert reports where the report was critical to the party's case, the report was submitted before trial, the defaulting counsel was not guilty of willful misconduct, any potential prejudice to the adverse party could be remediated, and the client was entirely innocent. Id.

16. If the requested extension is not granted, the unintentional errors by the Trust's counsel could result in substantial harm to the Trust, which represents the general creditors of CTC, a failed telecommunications company that filed for bankruptcy in 2002. The Trust's

fraudulent transfer claim seeks to set aside excessive payments Telecom Realty received in a self dealing transaction. Telecom Realty is a close corporation owned by the former senior managers of CTC and its former general counsel. The Trust alleges these insiders formed Telecom Realty to acquire personally real property needed by CTC, and then negotiated with themselves to have CTC to make millions of dollars of capital improvements to the real property for their personal benefit. While ordinarily a liquidation trust or bankruptcy trustee could present the evidence of former corporate officers to demonstrate the disparity between what the debtor paid and what the debtor received, here those officers hold ownership interests in the Defendant. If the Trust is precluded from presenting expert testimony regarding the difference between the value of what CTC paid and what it received, it may not be able to prove a viable fraudulent transfer case.

17.     It is inequitable for Telecom Realty to demand strict adherence to the Pretrial Schedule since it has also failed to comply with the Court's order. The order provides that "all fact discovery is to be <u>completed</u> on or before November 15, 2005". (Emphasis added.) However, Telecom Realty served numerous deposition notices on November 15, to take depositions and receive documents well after the 15th, including a corporate representative deposition of the Trust that will not be taken until after the New Year. The Trust did not assent to the service of this discovery, although in the interest of cooperation and resolving this matter fully on the merits, the Trust will provide the requested corporate representative.

18.     Further, the Trust has not received copies of the documents Telecom Realty received as a result of its service of subpoenas duces tecum on third parties, some of whom, the Trust understands, have still not fully complied with the subpoenas. If the purpose of the one month interval in the Pretrial Schedule between the **completion** of discovery and the submission of the Plaintiffs' expert report was to insure that the parties' experts would have all relevant

materials before they wrote their reports, Telecom Realty cannot complain about a brief extension of time to submit an expert report given that its own discovery is still ongoing, and the Trust and its expert have not received documents gathered during the discovery process that may be relevant.

19.     Here, where the Trust's omission was unintentional and no prejudice will be visited upon Telecom Realty as a result of such omission, good cause clearly exists to allow submission of an expert report by January 15, 2006.

### III.     CONCLUSION

For all of the foregoing reasons, the Trust respectfully requests that this Court (1) grant the emergency motion; and (2) grant such other and further relief as it deem just under the circumstances.

Respectfully submitted,

**THE CTC LITIGATION TRUST**

By its attorneys,

*/s/ William R. Baldiga* /by SAP w/ permiss.
William R. Baldiga (BBO #542125)
Robert L. Harris (BBO #644829)
Brown Rudnick Berlack Israels LLP
One Financial Center
Boston, MA 02111
(617) 856-8200

-and-

Thomas Hoffman, Esq.
Michael Tabb, Esq.
Green & Hoffman P.C.
125 Summer Street, 14th Floor
Boston, MA 02110

>Thomas Hoffman, Esq.
>Michael Tabb, Esq.
>Green & Hoffman P.C.
>125 Summer Street, 14th Floor
>Boston, MA 02110

Dated: December 23, 2005

## LOCAL RULE 7.1(A)(2) CERTIFICATION

Counsel hereby certifies, in accordance with Local Rule 7.1(A)(2) that prior to filing this paper, the parties have conferred and attempted in good faith to resolve or narrow the issues presented herein.

*/s/ William R. Baldiga*
~~Robert L. Harris~~ William R. Baldiga

## CERTIFICATE OF SERVICE

I, ~~Robert L. Harris~~ William R. Baldiga, hereby certify that on this 23rd day of December, 2005, a true copy of the within Emergency Motion to Extend Deadline for Submission of Expert Report was served via first class mail, postage prepaid, upon the following:

>Brendan R. Recupero, Esq.
>Craig and Macauley Professional Corporation
>Federal Reserve Plaza
>600 Atlantic Avenue
>Boston, MA 02210

*/s/ William R. Baldiga*
~~Robert L. Harris~~ William R. Baldiga

Dated: December 23, 2005

# 1405186 v1 - HARRISRL - 024183/00011